UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:25-CR-14044-CANNON

UNITED STATES OF AMERICA,

    Plaintiff,
vs.

EARL KNOWLES

    Defendant.
_____/

## SENTENCING MEMORANDUM

COMES NOW, defendant Earl Knowles, by and through his undersigned CJA counsel, Sarah Maya, Esq., pursuant to U.S.S.G. § 6A1.2-3 and 18 U.S.C. § 3353(a), and respectfully files this sentencing memorandum, and requests that the Court sentence the defendant at the low end of his guidelines calculations.

**INTRODUCTION**

Earl Knowles (Earl), is a 56 year old citizen of the Bahamas. He will appear before this Honorable Court for sentencing on February 3, 2026 extremely remorseful for the choices he made that brought him before this Court. Earl entered a timely guilty plea and has accepted responsibility for his actions. His PreSentence Investigation Report calculates a total offense level of 15 and a criminal history category II, for a guideline imprisonment range of 21 to 27 months. We request that the Court consider Earl's personal history and characteristics and sentence him at the low end of his guideline calculations which is sufficient, but not greater than necessary to achieve the purposes of sentencing as outlined in 18 U.S.C. § 3353(a).

1

**HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

Under Title 18 U.S.C. § 3353(a)(1), a defendant's personal history and characteristics should be considered equally with the nature and circumstances of the offense. Earl is 56 years old, one of nine siblings. He is a citizen of the Bahamas, though much of his life has been spent in the United States in and out of custody.

In February 2019, following a lengthy federal prison sentence, Earl was removed from the United States to his native Bahamas for a second time. Though he had extensive family in the United States—children, a wife, siblings and extended family, Earl had roots in the Bahamas. And for the first time in his adult life, Earl leaned into those roots to establish himself in the Bahamas. He restored his family's home. He reconnected with family. He began working for his brother-in-law's company, Evan's Construction, as a carpenter, mason, and also driving personnel and materials to job sites. Earl became an active member of his church and attended leadership conferences. He helped his brother Jeremy and elderly neighbors, among others, with everyday tasks like grocery shopping and paying bills. Earl led a simple but fulling life in the Bahamas, surrounded by his siblings, nieces, nephews and friends.

Earl came to terms with having long distance relationships with his loved ones in the United States, relying heavily on their visits, social media, phone calls and FaceTime. After Earl was removed, he and his wife Angela Boyce decided it was not financially feasible and emotionally sustainable for her to continue to travel from her native New York to the Bahamas to visit Earl. They separated, though remained legally married. Earl and Angela maintained a daily connection though raising their minor daughter, Xyomara, who is diagnosed Autistic. Therapies, services and schooling options for Xyomara are far superior in the United States so the pair made the decision for Xyomara to live full time with her mother in New York.

2

In July 2023, Earl received a panicked call from 16-year-old Xyomara. Xyomara found her mother unresponsive on the floor of her bedroom and didn't know what to do. Earl talked Xyomara though calling 911. Angela was admitted to the hospital after sustaining a brain bleed from a diabetic coma. After surgeries and several months in the hospital, Angela was declared brain dead, intubated and transferred to a long-term care facility. With Angela stable on a breathing machine and in a nursing home setting, Earl's focus turned to his minor daughter, who no longer had a parent by her side. Earl's family assisted in temporarily caring for Xyomara in New York while Earl navigated the complicated process of getting Xyomara, a United States citizen, a passport remotely. Eventually, he was successful and in June 2024, Xyomara moved to the Bahamas to live with her father.

Earl was very happy to have his youngest daughter living with him full time. He found a private school that specialized in assisting Autistic teens and enrolled Xyomara in a number of therapies. Simultaneously, he mourned what happened to Angela and the unexplainable void it left with Xyomara. Earl sought solace in his church and confided in family, which lead him to connecting with a family friend, Linda Echols. Linda had also sustained significant recent loss. Linda and Earl bonded over many phone and video calls. As their relationship grew, Linda visited Earl in the Bahamas and met Xyomara. Shortly thereafter, Linda and Earl became engaged.

But despite the joy of having his daughter close, a productive job, and a loving relationship with Linda, Earl still carried the weight of Angela's circumstances. After all this time, Angela was still unresponsive to any stimuli and kept alive with a breathing machine in New York. Providers describe her condition as "stable" but without any possibility of a positive advancement. To this day, Angela is being kept comfortable and free from pain but without any quality of life. Angela's next of kin were two people: her son Issaiah from a prior relationship, whom she was estranged for many years and Earl, who was legally prohibited from coming back to the United States. Xyomara, though still a minor, would never have the mental capabilities to legally make decisions on her mother's

behalf. And, in all candor, Earl did not want his daughter to come of age bearing the burden of making life and death decisions about her mother.

Over the years, Earl saved money to return to the United States to effectuate his wife Angela's last wishes and say his final goodbye. He needed closure. Angela needed to be at peace. Earl waited until Xyomara's school year ended. While she was on summer break and in the care of his sister Joanne in the Bahamas, Earl boarded a boat to the United States where he was ultimately arrested upon stepping foot on land. Once it was apparent that Earl had been arrested in the instant case, Linda traveled to the Bahamas to take temporary custody of Xyomara. Linda is raising Xyomara in Alabama, homeschooling her, as they eagerly await Earl's release from incarceration so they can restart their lives together in the Bahamas.

Earl's family is very close. Letters submitted to the Court describe his role as essential to everyone's success in the Bahamas. His family describes him as a selfless father, caring and kind hearted, a great worker and employee, dependable, and generous. His actions post-arrest show that he is remorseful for his conduct, understands the seriousness of his offense, and has accepted responsibility for his actions. Earl knows he cannot return to the United States under any circumstances, regardless of his intentions. Following his sentence, he will be deported back to the Bahamas.

**CONCLUSION**

The Supreme Court emphasized that the Court's assessment of the appropriate sentence should be individualized, stating: "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113, 116 S. Ct. 2035, 135 L. Ed. 2d 392

4

(1996). Underlying this principle is that "the punishment should fit the offender and not merely the crime." *Williams*, 337 U.S., at 247, 69 S. Ct. 1079, 93 L. Ed.1337*; see also Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 58 S. Ct. 59, 82 L.Ed. 43 (1937).

Earl acknowledges that he committed a serious offense in coming back to the United States which must be punished. He respectfully requests that the Court adopt the Sentencing Guideline calculations in the PreSentence Investigation Report at a total offense level of 15 and a criminal history category II, for a guideline imprisonment range of 21 to 27 months and sentence him at the low end of his guideline calculations. A sentence of 21 months is sufficient, but not greater than necessary, to achieve the purposes of sentencing as outlined in 18 U.S.C. § 3353(a).

**WHEREFORE**, based upon the aforementioned factors, it is respectfully requested that the Court impose a sentence of 21 months imprisonment.

Respectfully submitted,

*/s/ Sarah Maya*
SARAH MAYA, ESQ.
Florida Bar Number: 26547
Counsel for Earl Knowles

The Kreiss Law Firm
1824 SE 4th Avenue
Fort Lauderdale, Florida 33316
Tel 954-525-1971
skm@kreisslaw.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading has been furnished by CM/ECF to all counsel of record on this 26th day of January, 2026.

/s/ *Sarah Maya*
SARAH MAYA, ESQ.